```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------x
IN RE: FOSAMAX PRODUCTS LIABILITY      :    1:06-MD-1789-JFK
LITIGATION                             :    1:06-cv-9449-JFK
_____x
This Document Relates to               :
                                              Memorandum Opinion
Ronna Greene v. Merck & Co., Inc.,     :          & Order
No. 1:06-cv-9449-JFK
---------------------------------------x
```

**JOHN F. KEENAN, United States District Judge:**

Plaintiff Ronna Greene moves to amend her complaint to join additional defendants. [doc. # 65.] For the reasons stated below, the motion is GRANTED.

### Background

This multidistrict litigation ("MDL") consolidates for pre-trial coordination all federal cases in which plaintiffs allege that the prescription osteoporosis drug Fosamax, made by defendant Merck & Co., Inc., ("Merck"), caused them to develop a condition known as osteonecrosis of the jaw ("ONJ"). At the present time, there are approximately 675 open cases in this MDL.

There also exists a set of cases in which plaintiffs allege that their ONJ was caused by taking both Fosamax and Actonel, a competing osteoporosis drug manufactured by Proctor & Gamble ("P&G") and sanofi-aventis US L.L.C. ("Aventis"). Like Fosamax, Actonel belongs to the class of pharmaceuticals called oral bisphosphonates. The Judicial Panel on Multidistrict

Litigation did not include these "co-ingest cases" in this MDL, but left it up to my discretion to coordinate them alongside it. Currently, there are approximately twenty-five co-ingest cases pending before the Court.[1]

In September 2006, Plaintiff Ronna Greene filed a complaint against Merck alleging that she developed ONJ from her use of Fosamax only.  In October 2006, the case became one of the earliest to be transferred to these MDL proceedings.  Case Management Order ("CMO") No. 10, which was issued on January 30, 2007, designated Greene's case as among those potentially eligible for inclusion in an early trial pool to be made up of twenty-five cases.  Pursuant to CMO 10, these twenty-five cases were to proceed through fact discovery on an expedited basis.  From the twenty-five, three eventually would be selected for early trial.  If any of the twenty-five cases was dismissed or settled pre-trial, it would be replaced with a case from a back up trial pool.

On February 9 2007, Greene completed a Plaintiff Profile Form ("PPF") and submitted it to Merck.  Her PPF disclosed that she had taken both Fosamax and Actonel for unknown durations of time.  Records obtained from CVS Pharmacy

---

[1] In addition, a number of cases involving only Actonel claims have been filed.  These cases are proceeding according to a pre-trial schedule issued on November 3, 2008. See, e.g., Simmons v. Proctor & Gamble et al., No. 1:06-CV-0454-JFK.

around that time showed that, between December 2002 and January 2005, Greene filled only one Actonel prescription at that pharmacy: a refill for a one-month's supply dispensed in January 2005.

On February 27, 2007, Merck's counsel wrote a letter to the Court jointly on behalf of Merck and the Plaintiff's Steering Committee ("PSC") to relate that "both sides have agreed, subject to the Court's approval, that the universe of initial trial cases should not include any case involving multiple pharmaceutical defendants."  Pursuant to this agreement, fourteen cases involving multiple pharmaceutical defendants were eliminated from the list of cases eligible to become part of the early trial pool.  Because Greene's complaint did not name any pharmaceutical defendants other than Merck, it remained eligible.

On June 11, 2007, the twenty-five trial pool cases were selected.  The cases that were not selected, including Greene's, formed the back up trial pool.

Expedited discovery in the trial pool cases proceeded according to schedule.  Meanwhile, in late July or early August 2007, Plaintiff's counsel received records from another pharmacy revealing that Plaintiff had filled Actonel prescriptions there from July 20, 2004, until December 14, 2004, in addition to the January 2005 refill at CVS.  It then became

3

apparent to Greene and her counsel that her bisphosphonate treatment consisted of seven months of Actonel use and six months of Fosamax use.

Nevertheless, Greene did not seek to add Actonel claims nor join P&G and Aventis as defendants, and her case remained in the back up pool. Her counsel, the law firm of Levin Papantonio et al., is lead counsel for the PSC and represents many plaintiffs in this MDL. On behalf of clients who, like Greene, had taken both drugs, the firm generally filed Fosamax claims in this MDL but did not file any Actonel claims. Instead, the firm would enter into a tolling agreement with P&G and Aventis, postponing the filing of Actonel claims.

In September 2008, with discovery in the trial pool cases winding down and scheduled to be completed the following month, Merck sought and obtained leave to take depositions in the back up cases. Merck deposed Greene on September 5, 2008. At the deposition, Greene's counsel informed Merck that any Actonel claim that Greene had would be tolled pursuant to a tolling agreement with P&G and Aventis. Greene executed that tolling agreement three days later. Merck continued to take fact discovery depositions in Greene's case, deposing her oral surgeon and two primary care physicians.

Shortly after fact discovery in the trial pool cases closed on October 1, 2008, Merck informed Plaintiff's counsel

4

that it intended to select a back up case to fill a vacancy in the trial pool created by a dismissal in July 2008. Greene's counsel took the position, for the first time, that "Ms. Greene's case was no longer eligible for the trial pool because of the claim that existed against P&G and Aventis." (Pl.'s Reply 5.)

On October 10, 2008, Greene's counsel informed the Court of its intent to file the instant motion to amend the complaint to add Actonel claims and to join P&G and Aventis as defendants. A pre-motion conference was held on October 16, 2008, to set a briefing schedule.

On October 24, 2008, the Court issued CMO 15, which, among other things, published the list of early trial cases and their respective trial dates. The first trial will commence in August 2009. In the event that one of the three early trial cases is dismissed or resolved in a dispositive motion, it will be replaced with one of the cases remaining in the trial pool.

On October 20, 2008, Plaintiff filed the instant motion to amend the complaint. The parties agree that the amendment, if permitted, would preclude Greene's case from entering the trial pool to serve as a potential replacement for any of the three early trial cases. Merck opposes the amendment on grounds of undue delay, prejudice, and bad faith.

**Discussion**

Rule 21 of the Federal Rules of Civil Procedure governs proposed amendments seeking to join new defendants. The rule provides that a party may be added "at any time, on just terms." Fed. R. Civ. P. 21. It is "intended to permit the bringing in of a person, who through inadvertence, mistake or for some other reason, had not been made a party and whose presence as a party is later found necessary or desirable." United States v. Commercial Bank of N. Am., 31 F.R.D. 133, 135 (S.D.N.Y. 1962) (quotation marks omitted).

Under Rule 21, "courts must consider judicial economy and their ability to manage each particular case, as well as how the amendment would affect the use of judicial resources, the impact the amendment would have on the judicial system, and the impact [it] would have on each of the parties already named in the action." Sly Magazine, LLC v. Weider Publ'ns L.L.C., 241 F.R.D. 527, 532 (S.D.N.Y. 2007). Motions pursuant to Rule 21 are treated with the "same standard of liberality afforded to motions to amend pleadings under Rule 15." Soler v. G & U, Inc., 86 F.R.D. 524, 528 (S.D.N.Y. 1980). Rule 15 directs that leave to amend shall be freely given "when justice so requires." Fed. R. Civ. P. 15(a); Foman v. Davis, 371 U.S. 178, 182 (1962). A court has discretion to deny leave "only for such reasons as undue delay, bad faith, futility of the amendment, and perhaps

6

most important, the resulting prejudice to the opposing party." Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 (2d Cir. 1987) (quotation marks omitted).

Clearly, there was a considerable amount of delay in the filing of this motion.  Plaintiff argues that she did not know she had a claim against the Actonel defendants until late July or early August 2007, when she obtained pharmacy records revealing the duration and extent of her Actonel use.  Even so, she waited another fourteen months before seeking to amend the complaint to join the Actonel defendants.  "The burden to explain a delay is on the party that seeks leave to amend," Yurman Design Inc. v. Chaindom Enters., Inc., No. 99 Civ. 9307, 2001 WL 725291, at *2 (S.D.N.Y. 2001) (quotation marks omitted), and Plaintiff has failed to provide a good explanation.  She asserts that she had "no practical reason" to join the Actonel defendants because her case could not become eligible for early trial absent a vacancy in the trial pool, which did not occur until July 2008. (Pl.'s Reply 7.)  Yet she knew from the outset that a vacancy might open up at any time, and that her case was designated as a potential substitute based on the express understanding that it involved Fosamax claims only.  Moreover, there is no practical reason for Plaintiff to have proceeded with her Fosamax claims yet tolled her Actonel claims, if she hoped to join them in one action ultimately.

7

Given Plaintiff's inadequate explanation for failing to bring in the Actonel defendants earlier, the Court finds this motion to be unduly delayed.

"Mere delay, however, absent a showing of bad faith or undue prejudice, does not provide a basis for the district court to deny the right to amend." Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008). The factors of delay and prejudice are related. "The longer the period of unexplained delay, the less will be required of the non-moving party in terms of a showing of prejudice." Evans v. Syracuse City Sch. Dist., 704 F.2d 44, 47 (2d Cir. 1983). In determining what constitutes prejudice, the Court considers (1) whether the amendment would require the opponent to expend significant additional resources to conduct discovery and prepare for trial, (2) whether the amendment would significantly delay the resolution of the dispute, and (3) whether the amendment would prevent the plaintiff from bringing a timely action in another jurisdiction. Block v. First Blood Assocs., 988 F.2d 344, 350 (2d Cir. 1993).

Merck opposes the motion first "because it is made after substantial fact discovery has already been completed." (Def.'s Mem. 6.) But "[t]he fact that one party has spent time and money preparing for trial will usually not be deemed prejudice sufficient to warrant a deviation from the rule

8

broadly allowing amendment to pleadings." Monahan v. New York City Dep't of Corr., 214 F.3d 275, 284 (2d Cir. 2000). Merck does not contend that the joinder of the Actonel defendants would require expenditure of additional resources on discovery or affect its overall defense strategy. The essential issue in dispute—whether bisphosphonates caused Greene to develop ONJ—would remain the same.

The only real prejudice would be the delay in resolving Greene's case. As Merck points out, "significant fact discovery has now been completed so that the case could be factually developed and considered for possible early trial selection." (Def.'s Mem. at 7.) Indeed, the amendment would make early trial of Greene's case unfeasible because discovery relating to her Actonel claims could not be finished by the early trial dates. Generally, "[o]ne of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action." H.L. Hayden Co. v. Siemens Med. Sys., 112 F.R.D. 417, 419 (S.D.N.Y. 1986). That is so because defendants "have an interest in and right to an expeditious determination of the claims against them." Id. (quotation marks omitted). In the context of this MDL, however, the delay would cause only slight prejudice to Merck. The three early trial cases already have been selected. If any is dismissed before

its trial date, Merck can choose a replacement from roughly twenty cases that have completed expedited discovery. The loss of Greene's case from the trial pool would work no significant hardship. Her ingestion of both drugs makes her case unrepresentative of all others in this MDL and, consequently, a poor candidate for a bellwether trial. See In re Fosamax Prods. Liab. Litig., MDL No. 1789, 2008 WL 5159778, at * 3 (S.D.N.Y. Dec. 10, 2008). This is reflected in the parties' initial agreement to exclude co-ingest cases from the trial pool.[2] Moreover, after the early trials are finished, Merck still will have to defend several hundred other cases in which fact discovery has not yet begun, including about twenty-five where the Actonel defendants are joined as co-defendants.

The slight prejudice to Merck coupled with Plaintiff's lengthy delay might justify denying leave to amend, were it not for the uneconomical result. "Case law has recognized that even where the non-movant demonstrates prejudice, that prejudice must be balanced against the court's interest in litigating all

---

[2] Merck also complains that the motion was "made as a strategic matter to keep [Greene's] case out of the early trial pool and to avoid a summary judgment ruling based upon her use of Fosamax for less than three years." (Def.'s Mem. 6.) However, the Court recently clarified that Merck need not use a trial pool case to raise the three-year issue on summary judgment. See In re Fosamax Prods. Liab. Litig., 2008 WL 5159778, at *3. Merck labels Plaintiff's behavior as "strategic gamesmanship," but posits no plausible tactical advantage sought by her delay in seeking amendment.

potential claims in a single action." Topps Co., Inc. v. Cadbury Stani S.A.I.C., No. 99 Civ. 9437, 2002 WL 31014833, at *3 (S.D.N.Y. Sept. 10, 2002).  The substantive law governing Greene's claims provides for apportionment of damages between the defendant and non-parties who are jointly liable. See Fla. Stat. Ann. § 768.81(3); Nash v. Wells Fargo Guard Servs., Inc., 678 So. 2d 1262 (Fla. 1996).  Therefore, Greene would need to pursue separate actions against Merck and the Actonel defendants in order to have a chance at a full recovery.  Yet her Fosamax and Actonel claims are based on the same law, largely the same scientific evidence, the same disputed theories of causation, and the same fact witnesses.  Resolution of her Fosamax claims is not possible without an understanding of the effects of her Actonel use, and vice versa.  Trying the claims together in one action would be a far more efficient use of judicial resources. See id. (granting leave to amend because a denial "would simply multiply proceedings in this court with no apparent benefit to the parties").

Considerations of fairness to Plaintiff also weigh in favor of granting leave to amend, although these are tempered by her attorney's negligent delay in filing this motion.

In sum, because joinder would not materially prejudice Merck but would allow for a more efficient and fair resolution

11

of Plaintiff's claims, the motion to amend the complaint to add the Actonel claims and join P&G and Aventis as defendants is GRANTED.

The foregoing has revealed the need for deadlines with respect to amendment of pleadings and addition of new defendants. For all cases filed in or transferred to this MDL on or before November 1, 2008, any amendment or joinder of new parties is due by May 1, 2009. For cases filed or transferred after November 1, 2008, any amendment or joinder of new parties is due six months from the date of such filing or transfer. These deadlines will be excused only for good cause shown. See Fed. R. Civ. P. 16(b)(3)(A), (B)(4); Parker v. Columbia Pictures Indus., 204 F.3d 326, 340 (2d Cir. 2000). The failure of an attorney to investigate his or her client's claims diligently will not constitute good cause.

SO ORDERED.

Dated:    New York, N.Y.
          January 2*j*, 2009

                              _____
                                    JOHN F. KEENAN
                              United States District Judge